UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - ----- x

UNITED STATES OF AMERICA                    :

              -v.-                    :

                                   12 Cr. 802 (KBF)

TREVOR COLE and                             :

DOMINIQUE JEAN PHILLIPPE,                    :

             Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - ----- x


# ARGUMENT IN SUPPORT OF FATICO FINDINGS


       This Court held a "Fatico" Hearing at which two basic issues were to be explored and decided. One, was there a "Ransom" involved as a component of the crimes which were committed in this case? And, two, was one of the victims raped during the course of this robbery?

       The testimony of both witnesses presented by the Government made it clear that the modus operandi of the perpetrators of this crime was to lure the victims to the apartment on Magenta Street and to rob them once they arrived. This is clearly evidenced by the testimony of Patrick James on cross-examination by this attorney.

E1FUCOLH                          James - direct                          120

1          (Recess)

2          THE COURT:   Who is going to go first, Mr. Heinrich?

3    CROSS-EXAMINATION

4    BY MR. HEINRICH:

5    Q.  Good afternoon, Mr. James.

6    A.  Good afternoon.

7    Q.  I am going to be very brief.

8          When you came into the apartment finally and were

9    accosted, and your first words were "you set me up" --

10   A.  Yeah.

11   Q.  -- you felt that Jeannette had lured you into the apartment

12   to be robbed, correct?

13   A.  Yes, basically.

14   Q.  Right?

15   A.  Right.

16   Q.  And in fact you were robbed?

17   A.  Yeah.

18   Q.  And then as things developed, the robbers, they attempted

19   to get you to lure your brother into the apartment also to be

20   robbed, correct?

21   A.  Yes.

22   Q.  That's what happened, right?

23   A.  Yeah.

24   Q.  But you never got your brother to come in -- there was no

25   brother, right?



```
E1FUCOLH                          James - cross

1    A.   There was no brother, no.

2    Q.   And eventually they just gave up and left,

3    A.   Right.

4         MR. HEINRICH:  I thank you very much.
```

There was never any demand for a "ransom" in order to effectuate the release of anyone being held captive. Section 2A4.1 of the sentencing guidelines provides for the increase of 6 levels in cases involving Kidnapping, Abduction, or unlawful Restraint, "If a ransom demand or a demand upon government was made". Plainly defined ransom is "a consideration paid or demanded for the release of someone or something from captivity". In this case, it is clear that the sole objective was to rob a drug dealer of his drugs and money. The testimony of the government's own witness, Patrick James support this position.

The question of whether one of the victims, Jeannette Adams, was also raped during the course of this crime is, of course, a much more troubling matter for this Court to decide. The very nature of the accusation is itself very compelling. However, years of experience by those involved in the law, on all sides (prosecution, defense and the Bench) has shown that allegations of rape have been employed by many as a means to extract vengeance. Because of that, such allegations require extreme scrutiny. And, in order for there to be a finding by this Court that it would be appropriate for rape, as a factor to be taken into consideration on sentencing, the court must find that the allegation of rape has been established by clear, unequivocal and convincing

evidence. In, **_United States v. Fatico_, 458 F. Supp. 388 - Dist. Court, ED New York 1978,** the court referenced this standard of proof stating;

> "In _Hollis v. Smith,_ the Second Circuit determined that due process requires proof of the critical fact at issue by "clear, unequivocal and convincing evidence." 571 F.2d 685, 695-96 (2d Cir. 1978). It found the evidence relied upon for the longer sentence did not measure up to that standard and granted a writ of habeas corpus."

The testimony here showed that Ms. Adams denied being sexually assaulted, immediately following her release, as she was being examined in the hospital. She made no mention of being raped during any of her interviews and only hinted that her "dignity" had been stolen by her assailants to Mr. James in a text message. That dignity could have been a reference to the fact that she always maintained that she had been urinated on. A fact, in and of itself, which makes the likelihood of a sexual assault more unbelievable. Her testimony that she was bound tightly, with duct tape hands and feet, also begs the unanswered question as to just how was the physical act of intercourse by three men accomplished given her restraints? Further casting doubt on this late allegation of rape is the fact that Ms. Adams, a trained Medical Assistant, took no action to ensure that she was not infected by HIV or by any STD as a result of being raped. Her assertion that she was raped by three men would also seem to be in conflict with the number of individuals alleged to have been present and the assertion that one of them was having sex with a female participant. And, the very late allegation only insured that the accuser would not have to face the lack of physical evidence such as semen, used condoms, or her own underwear.

The court also has before it a stipulation as to what the testimony of Gregory Accilien would be based upon the interviews he has had with the government. That stipulation avers that

Accilien did not witness any rape or sexual assault during the times that he was present and never heard any discussion, or mention of any sexual assault by any of the participants either during or after the robbery was over.

The result of all that has been put before the Court is that the only support for the allegation of rape is bare assertion, albeit strenuously made, by the witness. That testimony, when weighed against all of the unanswered questions cited above together with a total lack of corroborative evidence must leave this Court unable to render a finding that a rape had occurred by clear, unequivocal and convincing evidence.

**WHEREFORE,** this Court should reject the suggestion that a ransom was involved calling for the addition of 6 points to the defendant's offense level. And, similarly the Court should reject the suggestion that a rape was involved calling for another 6 points to be added to the defendant's guidelines calculation.

Dated:  Bronx, New York
       January 17, 2014

Respectfully submitted,

Benjamin Heinrich

Benjamin Heinrich